**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| O2COOL, LLC,<br>Plaintiff, | |
| v. | Civil Action No.: 1:25-CV-04936 |
| MENARD, INC.,<br>Defendant. | **Jury Trial Demanded** |

**COMPLAINT FOR WILLFUL PATENT INFRINGEMENT**

Plaintiff O2COOL, LLC sues Defendant Menard, Inc., and states:

**NATURE OF THE ACTION**

1.      For more than a decade, every year, Menard purchased thousands of O2C's well-known, patented misting fans, which Menard sold in its stores throughout the country. At some point more recently, Menard also began purchasing knockoffs of O2C's patented misting fans, and started selling those copycats in its stores, too, at a lower price. In other words, at the same time Menard was selling O2C's misting fans, it was also selling cheaper knockoffs of O2C's patented misting fans. Those copycat fans infringe O2C's intellectual property.

2.      Valuing its long-term relationships with its customers, O2C contacted Menard with the hope that this was the result of an oversight that Menard would quickly address and that the matter would be promptly resolved. Instead, Menard not only ignored O2C's concerns, but also then retaliated by dropping O2C's misting fans, after having purchased them regularly for over a decade, along with other unrelated O2C products Menard had also been purchasing. For Menard's knowing, willful, and egregious disregard of O2C's intellectual property rights, O2C seeks injunctive relief and damages, as well as all of its all court costs, attorneys' fees, and related expenses incurred as a result of Menard's willful infringement.

## THE PARTIES

3.     Plaintiff O2COOL, LLC is a Delaware limited liability company with its principal place of business at 300 South Riverside Plaza, Chicago, Illinois 60606.

4.     Upon information and belief, Defendant Menard, Inc. ("Menard") is a Delaware corporation with its headquarters located at 5101 Menard Drive, Eau Claire, Wisconsin 54703.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) over the patent infringement and Lanham Act claims against Menard. The federal claims arise under the patent laws and Lanham Act of the United States, specifically 35 U.S.C. §§ 1 *et seq.* and 15 U.S.C. §§ 1051 *et seq.* Subject matter jurisdiction exists over any remaining claims under 28 U.S.C. § 1367(a) because the claims are so related that they form part of the same case or controversy.

6.     This Court has personal jurisdiction over Menard because Menard's products, including but not limited to the products accused herein, are offered for sale and are being sold in the State of Illinois and in this judicial district. Menard thereby committed the tortious acts described herein in Illinois and in this judicial district, or otherwise established contacts with this judicial district sufficient to make the exercise of personal jurisdiction proper.

7.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 because Menard is subject to personal jurisdiction in this district, has committed acts of infringement in this district, has a regular and established place of business in this district, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of property that is subject of the action is situated in this judicial district.

## FACTS COMMON TO ALL COUNTS

### A.   O2C's Innovations and Business

8.      By virtue of several decades of innovations and product development, O2COOL (along with its predecessors, collectively referred to herein as "O2C") has become a known innovator in the "Cooling and Hydration" consumer goods market, which includes drinking bottles, misting bottles, fans, misting fans, and other products associated with cooling and hydrating one's body.

9.      During this period of innovation and product development, O2C has obtained more than 300 U.S. and foreign patents covering its Cooling and Hydration product inventions.

10.      In or around the mid-2000's and thereafter, O2C invented various personal misting fans – handheld fans that could spray liquid to help cool the user of the fan – as well as features related to misting fans.

11.      O2C pursued patent protection on various of its misting fan inventions.

12.      For example, on August 10, 2006, O2C filed design patent applications covering the ornamental design of two different misting fans, each of which issued as U.S. patents in 2007.

13.      One of those patents was U.S. Patent No. D553,227 ("'227 Design Patent), attached hereto as **Exhibit A**. Figures 1 and 2 of the '227 Design Patent are shown below:



14. Since the '227 Design Patent issued back in 2007, O2C has consistently advertised, marketed, offered for sale and sold misting fans embodying the design in the '227 Design Patent. ("O2C's Misting Fans").

15. The design of O2C's Misting Fan (the "O2C Misting Fan Design") is shown in the images below.



16. Because of the extensive marketing, advertising, promotion and popularity of the O2C's Misting Fans, and O2C's continuous use of the O2C Misting Fan Design, an association has been created in the minds of consumers between the O2C Misting Fan Design and O2C.

17. When consumers see a misting fan that looks like the O2C Misting Fan Design, consumers associate the fan with O2C as the source of such fans, and accordingly, O2C's exclusivity over the O2C Misting Fan Design continues under the Lanham Act and United States trade dress laws.

18. O2C's misting fan innovations are not limited to their ornamental design(s) and aesthetic features. O2C also obtained utility patents covering certain aspects relating to its misting fan innovations.

19.     For example, on March 28, 2007, O2C filed two non-provisional utility patent applications related to its misting fan inventions.

20.     One was titled *Handheld Water Misting Fan With Improved Air Flow*, and issued as U.S. Patent No. 7,806,388 ("'388 Patent) on October 5, 2010 (attached hereto as **Exhibit B**); and the other was titled *Break Resistant Joint*, and issued as U.S. Patent No. 7,810,794 ("'794 Patent") on October 12, 2010 (attached hereto as **Exhibit C**).

21.     O2C is the owner by assignment of both the '388 Patent and the '794 Patent.

22.     The '388 Patent and the '794 Patent are valid, unexpired, enforceable, and duly issued in compliance with Title 35 of the United States Code.

23.     Exemplary figures from the '388 Patent and the '794 Patent are shown below:

| Figure from '388 Patent | Figure from '794 Patent |
| --- | --- |



**B.     Menard's History With O2C's Products**

24.     Well over a decade ago, Menard began purchasing O2C's Misting Fans.

25.     From well over a decade ago through 2023, Menard purchased thousands of O2C's Misting Fans each year and sold them in Menard stores throughout the country, including in this judicial district.

26.    By its selling of O2C's Misting Fans for more than a decade, Menard obtained relevant market information about misting fans, generally, and O2C's Misting Fans, specifically.

27.    Menard has also purchased other Cooling and Hydration products from O2C, including its Deluxe Necklace Fan, 5" Clip Fan, 4" Clip Fan, and various other products. Exemplars of some of the products that Menard bought from O2C and sold in its stores are shown below:



### C.    Menard's Infringing Activities

28.    In or around April 2023, at the same time it was selling O2C's Misting Fans, O2C learned that Menard, at some point, had also begun selling copycat fans embodying O2C's Misting Fan Design supplied by one or more entities who did not have license or other authorization from O2C to make, offer for sale, sell, or import such products.

29.    Examples of Menard's offering for sale infringing copycats of O2C's Misting Fan ("Infringing Fan(s)") are shown below:



30.     A side-by-side comparison of the O2C Misting Fan Design and the Infringing Fans demonstrates that the Menard's Infringing Fans are effectively identical, aesthetically, to the O2C Misting Fan Design:



31.     Menard's Infringing Fans are also effectively identical in function as it relates to the claimed subject matter in the '388 and '794 Patents.

32.     Indeed, as set forth in further detail below, the Menard Infringing Fans meet every element of one or more claims from each of the '388 and '794 Patents.

33.     Given Menard's long history of purchasing O2C's Misting Fans, which are marked in accordance with 35 U.S.C. § 287, Menard was aware of the '388 and '794 Patents for over six years now (*i.e.*, long before ever offering for sale the Infringing Fans).

34.     Moreover, on numerous occasions in 2023, O2C communicated its concern regarding Menard's willful disregard for O2C's intellectual property rights.

35.     Indeed, on or about April 2023, O2C raised the issue of Menard's offering a copycat of O2C's Misting Fan with a representative of Menard.

36.     On July 6, 2023, O2C informed Menard that Menard was selling Misting Fans that infringed O2C's intellectual property, including the '388 and '794 Patents. *See* **Combined Exhibit D** at D-1.

37.     In that letter, O2C explained that it was "disappointed by this development," given O2C's "long-standing relationship with Menard," especially because O2C has "spent significant resources developing innovative products and protecting its intellectual property rights in its products." *Id.*

38.     O2C further communicated to Menard that O2C "was hopeful that this is not a case of Menard ignoring O2COOL's patent rights but instead an isolated instance that will not repeat itself." *Id.*

39.     After Menard provided no substantive response to O2C's letter, O2C followed up the following month, noting that "Menards continues to sell the Infringing Fans online and in stores," and that O2C "remains disappointed that Menards continues to sell products that don't just infringe O2COOL's patents generally, but patents covering O2COOL's products that are also sold by Menards," noting that Menard was selling both O2C's Misting Fans and also Infringing Fans in stores and online at the same time. *See id.* at D-2.

40.     Having still received no response from Menard, O2C followed up with Menard again on August 28, 2023. *See id.* at D-3.

41.     O2C did not receive a substantive response from Menard addressing O2C's infringement claims against Menard.

42.     Instead, O2C was informed by Menard that Menard would no longer be purchasing O2C's Misting Fans.

43.     Menard also communicated that it would no longer be purchasing any of the other Cooling and Hydration products it had been purchasing from O2C (*e.g.,* O2C's Deluxe Necklace Fan, 5" Clip Fan, etc.).

44.     In other words, not only did Menard continue to sell fans that infringed O2C's intellectual property – intellectual property of which Menard had actual notice – but Menard also then doubled down on the harm to O2C by discontinuing the purchase of O2C's Misting Fans and instead selling *only* the Infringing Fans; and then tripled down by discontinuing the purchase of O2C's other Cooling and Hydration products that Menard had been purchasing until O2C raised the issue of Menard's Infringing Fans.

45.     In a final attempt to resolve the matter short of litigation, O2C contacted Menard yet again on August 5, 2024.

46.     In that correspondence, O2C explained that it was "deeply disappointed and frustrated by Menards' conduct" and that "[i]n view of O2C's past communications to Menards about this matter, it should come as no surprise that O2C is prepared to proceed with this matter against Menards in federal court." *See id.* at D-4. O2C included a draft complaint against Menard with that correspondence.

47.     In response, on August 16, 2024, Menard purported to be "gathering information from Menards and the supplier," and that it "expect[ed] to have a substantive response to [O2C] next week."

48.     As explained to Menard on September 13, 2024, despite claiming it was "gathering information from Menards and the supplier," Menard never provided any of the information

requested by O2C, and further, Menards was "*still* offering the infringing fans, which means it is *still* willfully infringing O2C's patents to this very day …" *See id.* at D-5.

49.     In that letter, O2C reiterated that despite the numerous communications, "Menards still has not provided the information we requested, which leads us to believe that Menards is not approaching a potential resolution in good faith," and that "if Menards actually wants to resolve this matter, it will provide sales figures from all misting fans that Menards has sold that were not O2C products, and will provide its proposed resolution." *Id.*

50.     On October 8, 2024, Menard responded: "We are continue (sic) to secure information from Menard, Inc. about their sales and acquisition of accused products. We hope to have a further response to you during the early part of next week." *Id.*

51.     To date, Menard has not provided that information (or ever contacted O2C again), and continues its willful infringement, as shown by the following photo of Infringing Fans taken in a Menard store within the last month:

 

- 10 -

## COUNT I
### Infringement Of U.S. Patent No. 7,806,388

52.     O2C adopts and incorporates by reference the allegations of the preceding Paragraphs 1-51 as if fully set forth herein.

53.     Menard's offers for sale, selling, importation, and/or use of the Infringing Fans in the U.S. constitutes infringement of at least Claim 1 of the '388 Patent, either literally or under the doctrine of equivalents.

54.     The Infringing Fans meet each and every limitation of Claim 1 of the '388 Patent.

55.     The preamble of Claim 1 of the '388 Patent states: "A portable misting and cooling fan device of the type formed by a body including a lower handle section and an upper head section, the lower handle section accommodating a fluid reservoir and the upper head section including a fan device operated by a fan motor and surrounded by a protective shroud having an upper end and a lower end, and fan actuator means and a misting nozzle, the misting nozzle being in fluid communication with the reservoir through pump means for pumping fluid from the reservoir to the misting nozzle, the pump means having actuator means for actuating the pump means, and the misting nozzle being positioned in the head section to deliver a stream of misted fluid into the air stream created by the fan device, the improvement comprising."

56.     Without regard for whether the preamble of Claim 1 of the '388 Patent is limiting, the Infringing Fan, as shown below, has a body that includes a lower handle section (A) and an upper head section (B).



57. Further, the lower handle section of the Infringing Fan accommodates a fluid reservoir (C), and the upper head section of the Infringing Fan includes a fan device operated by a fan motor (D) and surrounded by a protective shroud having an upper end and a lower end (E), and fan actuator means (F) and a misting nozzle (G), as shown below.



58. In addition, as shown below, the misting nozzle of the Infringing Fan is in fluid communication with the Infringing Fan's reservoir through a pump means (H) for pumping fluid from the reservoir to the misting nozzle, with the pump means of the Infringing Fan having an actuator means (I) for actuating the pump means, with the misting nozzle (G) positioned in the head section to deliver a stream of misted fluid into the air stream created by the fan device.



59. Claim 1 of the '388 Patent also recites: "a power source compartment for accommodating a power source therein, said power source compartment being positioned within the device in a location remote from the fan motor."

60.     The Infringing Fan has a power source compartment (J) for accommodating a power source therein, with the power source compartment positioned within the device in a location remote from the fan motor (D), as shown below.



61.     Claim 1 of the '388 Patent also recites: "the area bounded by the shroud being substantially free of any structure thereby to maximize the air flow path therethrough, and the lower handle section having a relatively narrow intermediate portion forming a gripping handle, and an enlarged lower portion to form an enlarged fluid reservoir."

62.     On the Infringing Fan, as shown below, the area bounded by the shroud (E) is substantially free of any structure to maximize the air flow path therethrough, and the lower handle section (A) has a relatively narrow intermediate portion (K) forming a gripping handle, and an enlarged lower portion (L) to form an enlarged fluid reservoir.



63.     Menard's infringement of the '388 Patent has caused financial damages to O2C, including without limitation, for the lost sales that O2C would have otherwise received but for Menard's infringement.

64.     Menard's infringement of the '388 Patent has irreparably damaged O2C, including, for example, by thwarting O2C's right to exclude others from making, selling, offering to sell, and/or importing products embodying the invention patented in the '388 Patent.

65.     Menard's infringement of the '388 Patent has further irreparably damaged O2C because Menard offers for sale and sells the Infringing Fans for lower prices than the market otherwise would have dictated, thus causing irreparable economic competitive harm to O2C.

66.     Menard's infringement of the '388 Patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

67.     Menard's lacks a reasonable belief that making, using, selling, offering to sell or importing the Infringing Fans in the U.S. does not directly infringe the '388 Patent.

68.     Menard had actual knowledge of the '388 Patent, and knew or should have known that its actions constituted an unjustifiably high risk of infringement of the '388 Patent.

69.     Given Menard's history buying and selling O2C's Misting Fans, its actual knowledge of the '388 Patent, its willful disregard of O2C's communications regarding Menard's infringement, and its lack of reasonable belief that making, using, selling, offering to sell and/or importing the Infringing Fans in the U.S. does not directly infringe the '388 Patent, this is an egregious case of misconduct beyond typical infringement constituting willful infringement of the '388 Patent.

## COUNT II
### Infringement of U.S. Patent No. 7,810,794

70.     O2C adopts and incorporates by reference the allegations of the preceding

Paragraphs 1-51 as if fully set forth herein.

71.     Menard's offers for sale, selling, importation, and/or use of the Infringing Fans in the U.S. constitutes infringement of at least Claim 1 of the '388 Patent, either literally or under the doctrine of equivalents.

72.     The Infringing Fans meet each and every limitation of Claim 1 of the '388 Patent.

73.     The preamble of Claim 1 of the '794 Patent states: "misting fan device of the type formed by an upper body portion accommodating a motorized fan assembly and a spray misting assembly, and a lower body portion accommodating a fluid reservoir and a fill port for the fluid reservoir, the improvement comprising in combination."

74.     Without regard for whether the preamble of Claim 1 of the '794 Patent is limiting, the Infringing Fan, as shown below, is a misting fan device with an upper body portion (A) accommodating a motorized fan assembly (B) and a spray misting assembly (C), and a lower body portion (D) accommodating a fluid reservoir (E) and a fill port (F) for the fluid reservoir.



75.     Claim 1 of the '794 Patent also recites: "the lower body portion having an upwardly contoured configuration terminating in an upper neck portion having a non-circular configuration and a relatively flat top wall."

76.     The Infringing Fan's lower body portion (D) has an upwardly contoured configuration terminating in an upper neck portion (G) having a non-circular configuration and a relatively flat top wall (H), as shown below.



77.     Claim 1 of the '794 Patent also recites: "an aperture formed in said top wall of said neck portion, said aperture providing an access port for the spray misting assembly to establish fluid communication as between the fluid reservoir and the spray misting assembly.

78.     The Infringing Fan has an aperture (I) formed in the top wall of the neck portion, with the aperture providing an access port for the spray misting assembly to establish fluid communication between the fluid reservoir (E) and the spray misting assembly (C), as shown below.



79.     Claim 1 of the '794 Patent also recites: "said upper body portion formed by a first half body portion and a second half body portion, each of said first and second half body portions terminating in a first collar body and a second collar body respectively."

80.     On the Infringing Fan, the upper body portion is formed by a first half body portion (J) and a second half body portion (K), with each of the first and second half body portions terminating in a first collar body (L) and a second collar body (M), as shown below.



81.     Claim 1 of the '794 Patent also recites: "one of said neck portion and said first collar body and said second collar bodies having a least one elongate groove formed therein, and the other of said neck portion and first and second collar bodies having at least one rail formed therein."

82.     On the Infringing Fan, as shown below, one of the neck portion and first collar body and second collar bodies have at least one elongate groove (N) formed therein, and the other neck portion and first and second collar bodies have at least one railed (O) formed therein.



83.    Claim 1 of the '794 Patent also recites: "said first and second collar bodies being formed and contoured to overlie and capture said neck portion therebetween and said rail being slidedly engaged within said groove when said first and second half body portions are assembled onto said neck portion to form said upper body portion."

84.    On the Infringing Fan the first and second collar bodies are formed and contoured to overlie and capture the neck portion therebetween and the rail is slidedly engaged within the groove when the first and second half body portions are assembled onto the neck portion to form the upper body portion, as shown below.



85.     Claim 1 of the '794 Patent also recites: "lock means for locking said first and second body portions together when assembled on said neck portion thereby to form a break resistant joint as between said lower body portion and said upper body portion when said misting fan device is assembled."

86.     The Infringing Fan has a lock means (P) for locking the first and second body portions together when assembled on the neck portion to form a break resistant joint between the lower body portion and the upper body portion when the device is assembled, as shown below.



87.     Menard's infringement of the '794 Patent has caused financial damages to O2C, including without limitation, for the lost sales that O2C would have otherwise received but for Menard's infringement.

88.     Menard's infringement of the ' 794 Patent has irreparably damaged O2C, including, for example, by thwarting O2C's right to exclude others from making, selling, offering to sell, and/or importing products embodying the invention patented in the ' 794 Patent.

89.     Menard's infringement of the '794 Patent has further irreparably damaged O2C because Menard offers for sale and sells the Infringing Fans for lower prices than the market otherwise would have dictated, thus causing irreparable economic competitive harm to O2C.

90.     Menard's infringement of the '794 Patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of the Court.

91.     Menard's lacks a reasonable belief that making, using, selling, offering to sell or importing the Infringing Fans in the U.S. does not directly infringe the '794 Patent.

92.     Menard had actual knowledge of the '794 Patent, and knew or should have known that its actions constituted an unjustifiably high risk of infringement of the '794 Patent.

93.     Given Menard's history buying and selling O2C's Misting Fans, its actual knowledge of the '794 Patent, its willful disregard of O2C's communications regarding Menard's infringement, and its lack of reasonable belief that making, using, selling, offering to sell and/or importing the Infringing Fans in the U.S. does not directly infringe the '794 Patent, this is an egregious case of misconduct beyond typical infringement constituting willful infringement of the '794 Patent.

## COUNT III
## Trade Dress Infringement under 15 U.S.C. § 1125(a)

94.     O2C adopts and incorporates by reference the allegations of the preceding Paragraphs 1-51 as if fully set forth herein.

95.     Upon information and belief, before offering the Infringing Fans for sale, Menard was aware of O2C's protectable rights in the O2C Misting Fan Design trade dress.

96.     O2C's trade dress for the O2C Misting Fan Design includes the total image of the product design.

97.     O2C's trade dress for the O2C Misting Fan Design has acquired secondary meaning.

98.     O2C's trade dress for the O2C Misting Fan Design is nonfunctional.

99.     On information and belief, Menard knew of O2C's trade dress for the O2C Misting Fan Design.

100.    Menard's selling, offering for sale, advertising and marketing Infringing Fans creates, causes and/or contributes to a false association between Menard and/or its Infringing Fans and O2C and O2C's Misting Fan Design products.  Menard's actions have caused and contributed to consumer confusion as to the origin of, or affiliation between the Infringing Fans and O2C and its products, and have traded unfairly upon O2C's goodwill and reputation, and continue to do so, in violation of 15 U.S.C. §1125(a).

101.    Menard's advertising, marketing, selling and offering for sale of the Infringing Fan is with knowledge and in willful disregard of O2C's intellectual property rights, including in the O2C Misting Fan Design.

102.    Menard's conduct has irreparably harmed O2C and will continue to irreparably harm O2C unless enjoined by this Court, as a result of which O2C is without an adequate remedy at law.

103.    Menard's unauthorized use of the O2C Misting Fan Design has injured and continues to injure O2C in an amount to be determined at trial.

**COUNT IV**
**Violation of Illinois Uniform Deceptive Trade Practices Act (815 ILC 510/Et Seq.)**

104.    O2C adopts and incorporates by reference the allegations of the preceding Paragraphs 1-51 as if fully set forth herein.

105.     Upon information and belief, before offering the Infringing Fans for sale, Menard was aware of O2C's protectable rights in the O2C Misting Fan Design trade dress.

106.     O2C's trade dress for the O2C Misting Fan Design includes the total image of the product design.

107.     O2C's trade dress for the O2C Misting Fan Design has acquired secondary meaning.

108.     O2C's trade dress for the O2C Misting Fan Design is nonfunctional.

109.     On information and belief, Menard knew of O2C's trade dress for the O2C Misting Fan Design.

110.     Menard's selling, offering for sale, advertising and marketing Infringing Fans creates, causes and/or contributes to a false association between Menard and/or its Infringing Fans and O2C and the O2C Misting Fan Design products. Menard's actions have caused and contributed to consumer confusion as to the origin of, or affiliation between the Infringing Fans and O2C and its products, and have traded unfairly upon O2C's goodwill and reputation, and continue to do so, in violation of 815 ILCS 510/2-3.

111.     O2C has been damaged by Menard's deceptive trade practices, and, unless granted injunctive relief by this Court, O2C will continue to be damaged by Menard's acts under 815 ILCS 510/2-3.

112.     O2COOL is also entitled to recover as yet undetermined amounts of monetary damages pursuant to 815 ILCS 510/3.

113.     Menard's advertising, marketing, selling and offering for sale of the Infringing Fan is with knowledge and in willful disregard of O2C's intellectual property rights, including in the O2C Misting Fan Design.

## COUNT V
## Common Law Unfair Competition

114.    O2C adopts and incorporates by reference the allegations of the preceding Paragraphs 1-51 as if fully set forth herein.

115.    Upon information and belief, before Menard began selling the Infringing Fans, Menard knew of and was aware of O2C's protectable rights in the O2C Misting Fan Design trade dress.

116.    O2C's trade dress for the O2C Misting Fan Design includes the total image of the product design.

117.    O2C's trade dress for the O2C Misting Fan Design is inherently distinctive and/or has acquired secondary meaning.

118.    O2C's trade dress for the O2C Misting Fan Design is nonfunctional.

119.    Menard's selling, offering for sale, advertising and marketing the Infringing Fans creates, causes and/or contributes to a false association between Menard and/or its Infringing Fans and O2C and O2C's Misting Fan Design products.  Menard's actions have caused and contributed to consumer confusion as to the origin of, or affiliation between, the Infringing Fans and O2C and O2C's Misting Fan Design products, and have traded unfairly upon O2C's goodwill and reputation, and continue to do so, in violation of O2C's common law rights in its protectable trade dress.

120.    Menard's advertising, marketing, selling and offering for sale of the Infringing Fan is with knowledge and in willful disregard of O2C's intellectual property rights in the O2C Misting Fan Design.

121.    Menard's conduct has irreparably harmed O2C and will continue to irreparably harm O2C unless enjoined by this Court, as a result of which O2C is without an adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, O2C respectfully requests the entry of judgment against Menard and its subsidiaries, successors, parents, affiliates, officers, agents, services, employees, and all persons in active concert or participation, providing the following relief:

A.    An order declaring that Menard has infringed the '388 Patent and that such infringement was willful;

B.    An order declaring that Menard has infringed the '794 Patent and that such infringement was willful;

C.    An order declaring that Menard has infringed O2C's trade dress rights in the O2C Misting Fan Design and that such infringement was willful;

D.    An order granting a permanent injunction, under 35 U.S.C. § 283 and the equitable powers of the Court, against Menard and all those in active concert or participation with them, to prevent further direct and/or indirect infringement of the '388 Patent;

E.    An order granting a permanent injunction, under 35 U.S.C. § 283 and the equitable powers of the Court, against Menard and all those in active concert or participation with them, to prevent further direct and/or indirect infringement of the '794 Patent;

F.    An awarding of damages to O2C in an amount that will be proved at trial and that will adequately compensate O2C for the patent infringement but in no amount less than a reasonable royalty as authorized by 35 U.S.C. § 284.

G.      An order declaring that O2C is a prevailing party and that this is an exceptional case, awarding O2C enhanced damages, its costs, expenses and reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

H.      An awarding to O2C of prejudgment interest and costs under 35 U.S.C. § 284 and/or other applicable laws.

I.      An awarding to O2C of damages resulting from Menard's infringement of O2C's protectable trade dress rights in the O2C Misting Fan Design;

J.      An order accounting for all gains, profits, and advantages derived from Menard's acts of infringement of O2C's trade dress pursuant to 15 U.S.C. § 1117;

K.      An awarding to O2C of damages and injunctive relief pursuant to 815 ILCS 510/3;

L.      An awarding to O2C of enhanced damages due to Menard's willful trade dress infringement;

M.      An order granting such other and further relief as this Court deems just and reasonable.

## JURY DEMAND

O2C demands a trial by jury on all issues triable to a jury.

Dated: May 5, 2025

Respectfully submitted,

By: */s/ Sartouk Moussavi*
Michael A. Parks, IL 6217230
Sartouk H. Moussavi, IL 6313554
THOMPSON COBURN LLP
55 East Monroe Street, 37th Floor
Chicago, IL 60603
P: (312) 346-7500; F: (312) 580-2201
mparks@thompsoncoburn.com
smoussavi@thompsoncoburn.com

*Attorneys For Defendant and Counterclaim-Plaintiff O2COOL, LLC*